UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SANDRA S.,[1] | ) | CIVIL ACTION NO. 4:22-CV-1098 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI,, | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**

## I.   INTRODUCTION

Plaintiff Sandra S., an adult who lives in the Middle District of Pennsylvania, seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

This matter is before me upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, the court finds the Commissioner's final decision

---

[1] To protect the privacy interests of plaintiffs in social security cases, we have adopted the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that federal courts should refer to plaintiffs in such cases by their first name and last initial.

is not supported by substantial evidence. Accordingly the Commissioner's final decision will be VACATED. This result is required because the ALJ discounted the only medical opinion about Plaintiff's physical residual functional capacity and did not cite to other medical evidence supporting the residual functional capacity determination.

## II.    BACKGROUND & PROCEDURAL HISTORY

On June 24 2016, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 822; Doc. 13-9, p. 59). In this application, Plaintiff alleged she became disabled on March 1, 2013, when she was fifty-three years old, due to the following conditions: clinical depression, anxiety and fibromyalgia. (Admin. Tr. 157; Doc. 13-6, p. 6). Plaintiff alleges that the combination of these conditions affects her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs and use her hands. (Admin. Tr. 185; Doc. 13-6, p. 34). Plaintiff has at least a high school education. (Admin. Tr. 852; Doc. 13-9, p. 67). Before the onset of her impairments, Plaintiff worked as a real estate agent, medical receptionist and file clerk. (Admin. Tr. 852; Doc. 13-9, p. 67).

On September 6, 2016, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 107; Doc. 13-4, p. 2). On September 22, 2016, Plaintiff requested an administrative hearing. (Admin. Tr. 112; Doc. 13-4, p. 7).

On April 4, 2018, Plaintiff, assisted by her counsel, appeared and testified during a hearing before Administrative Law Judge Daniel Balutis (the "ALJ"). (Admin. Tr. 876; Doc. 13-10, p. 18). On May 7, 2018, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 819; Doc. 13-9, p. 34). On May 14, 2018, Plaintiff requested that the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") review the ALJ's decision. (Admin. Tr. 134; Doc. 13-4, p. 29).

On March 7, 2019, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1; Doc. 13-2, p. 2). On May 2, 2019, Plaintiff filed a civil action in the United States District Court for the Middle District of Pennsylvania seeking review of the Commissioner's final decision. (Admin. Tr. 792-797; Doc. 13-9, pp. 7-12). On June 18, 2020, the undersigned issued a Memorandum Opinion and Order remanding the case to the Commissioner to conduct a new administrative hearing pursuant to sentence four of 42 U.S.C. § 405(g). (Admin. Tr. 799-817; Doc. 13-9, pp. 14-32).

On October 7, 2020, the Appeals Council issued an Order vacating the prior denial of benefits and remanded the case pursuant to this Court's Order. (Admin. Tr. 789; Doc. 13-9, p. 4).

On May 6, 2021, Plaintiff, assisted by her counsel, appeared and testified during a telephonic hearing before the same ALJ. (Admin. Tr. 844; Doc. 13-9, p.

59). On May 19, 2021, the ALJ issued a decision again denying Plaintiff's application for benefits. (Admin. Tr. 844-854; Doc. 13-9, pp. 59-69). Plaintiff timely requested that the Appeals Council review the ALJ's decision. (Doc. 1, p. 4).

On June 7, 2022, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 775-778; Doc. 13-8, pp. 2-5).

On July 14, 2022, Plaintiff filed a complaint in the district court. (Doc. 1). In the complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the law. (Doc. 1). As relief, Plaintiff requests that the court award disability benefits under Title II of the Social Security Act or remand this matter for further consideration by a different Administrative Law Judge. (Doc. 14, p. 23-25).

On September 20, 2022, the Commissioner filed an answer. (Doc. 12). In the answer, the Commissioner maintains that the decision denying Plaintiff's application was made in accordance with the law and is supported by substantial evidence. (Doc. 12). Along with her answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 13).

Plaintiff's Brief (Doc. 14), the Commissioner's Brief (Doc. 15), and Plaintiff's Reply (Doc. 16 ) have been filed.  This matter is now ready to decide.

## III.   LEGAL STANDARDS

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals, including the standard for substantial evidence review, and the guidelines for the ALJ's application of the five-step sequential evaluation process.

### A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[2] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3] Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.[4] A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.[5] But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions

---

[2] *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).
[3] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).
[4] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).
[5] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[6] In determining if the Commissioner's decision is supported by substantial evidence under sentence four of 42 U.S.C. § 405(g), the court may consider any evidence that was in the record that was made before the ALJ.[7]

The Supreme Court has underscored the limited scope of district court review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; see, *e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated*

---

[6] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[7] *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001) ("when the Appeals Council has denied review the district court may affirm, modify, or reverse the Commissioner's decision, with or without a remand based on the record that was made before the ALJ (Sentence Four review)."). The claimant and Commissioner are obligated to support each contention in their arguments with specific reference to the record relied upon. L.R. 83.40.4; *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("parties . . . bear the responsibility to comb the record and point the Court to the facts that support their arguments."); *Ciongoli v. Comm'r of Soc. Sec.*, No. 15-7449, 2016 WL 6821082 (D.N.J. Nov. 16, 2016) (noting that it is not the Court's role to comb the record hunting for evidence that the ALJ overlooked).

*Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).[8]

To determine whether the final decision is supported by substantial evidence, the court must decide not only whether "more than a scintilla" of evidence supports the ALJ's findings, but also whether those findings were made based on a correct application of the law.[9] In doing so, however, the court is enjoined to refrain from trying to re-weigh evidence and "must not substitute [its] own judgment for that of the fact finder."[10]

Furthermore, meaningful review cannot occur unless the final decision is adequately explained. As the Court of Appeals has noted on this score:

> In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular

---

[8] *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

[9] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[10] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.[11]

### B. STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[12] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.[13] To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.[14]

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.[15] Under this process, the ALJ must

---

[11] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

[12] 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).

[13] 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

[14] 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

[15] 20 C.F.R. § 404.1520(a).

sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[16]

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[17] In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[18]

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work.[19] Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could

---

[16] 20 C.F.R. § 404.1520(a)(4).

[17] *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1).

[18] 20 C.F.R. § 404.1545(a)(2).

[19] 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512(a); *Mason*, 994 F.2d at 1064.

perform that are consistent with the claimant's age, education, work experience and

RFC.[20]

## IV.   DISCUSSION

The introductory paragraph of Plaintiff's argument section of her brief asserts:

> The Administrative Law Judge committed reversible error and his
> Decision and Order denying benefits should be vacated with an award
> substituted or, in the alternative, remanded for further consideration
> because the Administrative Law Judge Decision and Order is not
> rational, is not based on the substantial competent evidence of record
> and is not in accord with applicable case law. [Plaintiff] will address
> specific reasons now.

(Doc. 14, p. 15). Plaintiff does not include a statement of errors in her brief as

required by Local Rule 83.40.4.[21]

We construe Plaintiff's brief as raising the following issues:

(1)   The ALJ failed to properly evaluate the medical evidence of record
when he discounted the medical opinion of Dr. Kerrigan, Plaintiff's
treating physician, and did not find it probative and persuasive;

(2)   The ALJ misconstrued the Claimant's description of her functional
limitations; and

(3)   The ALJ's RFC assessment is not supported by substantial evidence
because he discounted the only medical opinion about Plaintiff's
physical functional capacity.

---

[20] 20 C.F.R. § 404.1512(b)(3); *Mason*, 994 F.2d at 1064.
[21] Local Rule 83.40.4(b) requires a plaintiff to set forth specific errors what at
the administrative level which entitle Plaintiff to relief and explain that a general
argument that the findings are not supported by substantial evidence is not enough.

## A.   THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In his May 2021 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through March 31, 2016. (Admin. Tr. 854; Doc. 13-9, p. 69). Then, Plaintiff's application was evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between March 1, 2013 (Plaintiff's alleged onset date) and March 31, 2016 (Plaintiff's date last insured) ("the relevant period"). (Admin. Tr. 846; Doc. 13-9, p. 61).

At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: adjustment disorder with depressed mood and fibromyalgia. (Admin. Tr. 846; Doc. 13-9, p. 61).

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 847-848; Doc. 13-9, pp. 62-63).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in medium work as defined in 20 C.F.R. § 404.1567(c) subject to the following additional limitations:

Page 11 of 21

> the claimant could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, and could occasionally climb ladders, ropes, and scaffolds. Claimant was limited to performing, simple routine tasks. She was limited to making simple work-related decisions. Claimant could frequently respond appropriately to supervisors, co-workers and the public. Claimant's time off task could be accommodated by normal breaks.

(Admin. Tr. 848; Doc. 13-9, p. 63).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in her past relevant work. (Admin. Tr. 852; Doc. 13-9, p. 67).

At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 852-853; Doc. 13-9, pp. 67-68). To support this conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: Janitor (DOT 381.687-018; Hand Packer (DOT 920.587-018); and Laundry Worker (DOT 361.685-018). (Admin. Tr. 853; Doc. 13-9, p. 68).

**B.     WHETHER THE ALJ'S RFC ASSESSMENT IS SUPPORTED BY SUBSTANTIAL EVIDENCE WHERE HE DISCOUNTED THE ONLY MEDICAL OPINION ABOUT PLAINTIFF'S PHYSICAL FUNCTIONAL CAPACITY**

Plaintiff argues that "[n]o physician has stated that, from a physical standpoint, [Plaintiff] can sustain activity on a persistent basis to allow her to sustain work activity eight (8) hours a day, five (5) days a week." (Doc. 14, p. 20). Plaintiff

asserts that "there is no evidence of record from any treating source or, for that matter, any source at all that supports the Administrative Law Judge [sic] physical capacity assessment." (Doc. 14, p. 21).

The Commissioner argues generally that the ALJ's decision is supported by substantial evidence but does not address this argument with any particularity. (*See* Doc. 15).

There is no dispute that it is the ALJ's duty to assess a claimant's RFC.[22]  Further, the Commissioner's regulations and Third Circuit caselaw are clear that an ALJ must consider more than just medical opinions when evaluating a claimant's RFC.[23]  Although objective medical evidence and treatment records are relevant to an ALJ's RFC assessment and, *if* they include findings about a claimant's functional abilities may be sufficient to support specific findings in an RFC assessment on their own, as a practical matter such documents do not always contain this information. Thus, the reality in Social Security cases is that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an

---

[22] 20 C.F.R. § 404.1546(c).

[23] 20 C.F.R. § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); 20 C.F.R. § 404.1512(b) (explaining that "evidence" is "anything you or anyone else submits to us or that we obtain that relates to your claim."); *Burnett*, 220 F.3d at 121 ("In making a residual functional capacity determination, the ALJ must consider all evidence before him.").

assessment from a physician regarding the functional abilities of the claimant."[24] As

this court has explained:

> It is well established that an ALJ "is not free to set his own expertise against that of a physician who presents competent evidence. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985). In cases where the ALJ does not give any significant or great weight to any medical opinion, the Court has found that the ALJ "seemingly interpreted the medical evidence of record, and substituted her own opinion for that of a medical one in arriving at [a] Plaintiff's RFC." *McKay v. Colvin*, No. 3:14-CV-2020, 2015 WL 5124119, *17 (M.D. Pa. Aug. 13, 2015). *McKean* is particularly on point in this matter, as there the Court found the ALJ's RFC not supported by substantial evidence where the ALJ dismissed the only medical opinion in the record rendered in regard to the claimant's physical limitations. *See McKean*, 150 F. Supp. 3d at 418.[25]

"It is not error in and of itself to disagree with the opinion of a medical

professional."[26] An RFC assessment, however, is not supported by substantial

evidence where an ALJ assesses a lesser degree of limitation than found by any

medical professional without citing to another proper type of evidence that supports

his or her assessment.[27]

In this case, the ALJ did not cite to any medical opinion, finding, treatment

record or medical evidence supporting the RFC. The ALJ assigned "no weight" to

---

[24] *McKean v. Colvin*, 150 F. Supp.3d 406, 418 (M.D. Pa, 2015).

[25] *Decker v. Berryhill*, No. 1:17-cv-00945, 2018 WL 4189662 at *6 (M.D. Pa. June 8, 2018), *report and recommendation adopted*, 2018 WL 4184304 (M.D. Pa. Aug. 31, 2018).

[26] *Id.*

[27] *Id.* (listing cases).

Plaintiff's treating physician Dr. Kerrigan's medical opinions, the only two in the record. (Admin. Tr. 851-52; Doc. 13-9, pp. 66-67). In the explanation of the RFC determination, about Plaintiff's physical functional capabilities, the ALJ spent the most time reiterating Dr. Kerrigan's opinions and stating he was rejecting those opinions:

> In addition, the undersigned considered the Medical Source Statements of claimant's treating physician, Dr. Patrick Kerrigan, DO (Exhibits 19F and 22F). On March 26, 2018 and February 8, 2021, Dr. Kerrigan opined claimant could occasionally lift and/or carry up to 10 pounds, but never lift and/or carry 11 to 100 pounds. He opined claimant could sit, stand, and walk for 30 minutes each at one time without interruption. Dr. Kerrigan opined claimant could sit for 2 hours, stand for 1 hour, and walk for 1 hours, each total in an 8-hour workday. He opined claimant could occasionally reach, handle, finger, and feel, but never push and/or pull with her right hand. Dr. Kerrigan opined claimant could occasionally handle, finger, and feel, but never push and/or pull with her left hand. He further opined claimant could never operate foot controls with her bilateral feet. Dr. Kerrigan opined claimant could occasionally balance, stoop, and kneel, but could never perform all other postural maneuvers. He opined claimant could never be exposed to environmental limitations. Dr. Kerrigan opined claimant could not travel without a companion for assistance, could not walk a block at a reasonable pace, could not use standard public transportation, and could not sort, handle, nor use paper files Id. [sic] The undersigned assigns Dr. Kerrigan's opinions no weight as his opinions were documented almost 2 years and 5 years after claimant's date last insured. However, the U.S. District Court found Dr. Kerrigan noted the limitations were first present on January 31, 2016 (Exhibit 5A/18). It is noted Dr. Kerrigan noted claimant's impairments were first present on January 4, 2016, in his second Medical Source Statement dated February 8, 2021 (Exhibit 22F). Therefore, the undersigned considered Dr. Kerrigan's treatment of the claimant from January 4, 2016 to the date last insured. Dr. Kerrigan's treatment, during the relevant period, does not support his opinions.

The record showed Dr. Kerrigan saw the claimant on March 2, 2015 and then did not see her again until June 21, 2016. On March 2, 2015, claimant denied musculoskeletal pain, swelling, and ambulatory dysfunction. Dr. Kerrigan found claimant to have a normal gait and station, with normal musculoskeletal findings (Exhibit 9F/6-7). On June 21, 2016, after claimant's date last insured, Dr. Kerrigan diagnosed claimant with fibromyalgia and prescribed medications (Exhibit 9F/8). Dr. Kerrigan's physical examination revealed claimant to appear health [sic] and well developed, with no signs of apparent distress, having clear speech, and being fully oriented. Claimant was found to have an antalgic gait and crepitation and discomfort with movement of her upper and lower extremities, but otherwise normal findings and no noted trigger points (Exhibit 9F/8-9). Dr. Kerrigan noted claimant had been diagnosed with fibromyalgia by her rheumatologist, Dr. Jonida Cote, D.O. (Exhibit 9F/8). In fact, also after the claimant's date last insured, the claimant was diagnosed with fibromyalgia by Dr. Cote on June 10, 2016 (Exhibit 10F/1). Upon examination, Dr. Cote noted claimant had diffuse tenderness to palpitation over muscles, joints, and tender points, but also noted no synovitis, no swelling, and claimant's hands, wrists, elbows, shoulders, neck, back, hips, knees, ankles, and feet to be normal. Claimant's lab work also document normal findings. Claimant was placed on gabapentin and referred to physical therapy. Claimant requested to continue marijuana treatment, although this was noted to not be an approved medication for fibromyalgia, and declined cognitive behavioral therapy (Exhibit 10F/3).

In July 2016, Dr. Kerrigan found claimant to have an antalgic gait, but normal findings and symmetric range of motion in her upper and lower extremities. Again, no trigger points were noted (Exhibit 9F/11). This evidence supports a finding of no weight for Dr. Kerrigan's opinions, as during the relevant period, his physical examination findings did not support the limitations opined in his provided Medical Source Statements (Exhibit 19F and 22F).

(Admin Tr. 851-52; Doc. 13-9, pp. 66-67). The ALJ's rejection of Dr. Kerrigan's medical opinions is not substantial evidence supporting an RFC of medium work. It is merely a rejection of the limitations suggested by Dr. Kerrigan.

Outside of rejecting Dr. Kerrigan's findings, there is effectively no other discussion of medical evidence, findings or treatment records that concern Plaintiff's physical functional capacities. As to Plaintiff's physical functional capacities the ALJ wrote only that,

> Beginning at claimant's alleged onset date, her physical examinations noted normal findings, without tenderness, and a normal, steady gait (Exhibits 2F/2, 9, 9F/2). Imaging of claimant's head and chest also showed normal findings (Exhibit 3F/32-36). Claimant reported she was experiencing whole body pain since November 2015 (Exhibit 4F/2). Claimant was diagnosed with fibromyalgia after her date last insured had expired (Exhibits 4F/2 and 9F/8). Nonetheless, the undersigned found claimant's fibromyalgia to be a severe impairment when forming claimant's residual functional capacity to give claimant the benefit of the doubt. However, the medical evidence does not support any functional limitations from claimant's diagnosis during the relevant period.

(Admin Tr. 850; Doc. 13-9, p. 65).[28] The ALJ did not offer further explanation on how any of this information supports an RFC finding of medium work. Indeed, it is

---

[28] The ALJ notes that "the record does not contain an assessment of the claimant's physical limitations from a state agency medical consultant" and concludes "In sum, the claimant is able to meet the basic demands of medium work with certain additional limitations in place (as set forth in the RFC) on a sustained and continuing basis despite limitations resulting from her impairments." (Admin Tr. 852; Doc. 13-9, p. 67).

quite unclear from the ALJ's decision how he arrived at an RFC of medium work as opposed to heavy or light. Again, while objective medical evidence and treatment records are relevant to an ALJ's RFC assessment and, *if* they include findings about a claimant's functional abilities may be sufficient to support specific findings in an RFC assessment on their own, the sparse medical evidence and treatment records the ALJ cited to in this case do not include those findings.

In determining Plaintiff's RFC the ALJ found that Plaintiff's own reporting of her daily living activities were not consistent with her allegations and summarized the daily living activities she testified to:

> Claimant attended her hearing and alleged mental and physical impairments (Exhibit 4E and Hearing testimony). Claimant testified that from her alleged onset date to her date last insured, she resided with her husband. She reported she incurred daily whole body pain, alleging her pain was an 8 out of a 10. Claimant averred she had numbness, tingling and pain in her hands and alleged she would drops [sic] things 3 times per week. She alleged she would read, but had trouble concentrating on and remembering what she had read. Claimant admitted to enjoying television shows such as Law and Order, but testified she would need to re-watch episodes to understand the plot. Claimant averred her sleep was affected by her pain and she would get 4 to 5 hours of sleep per night. She alleged she would need to take naps during the day. Overall, claimant alleged she was unable to work, during the relevant period, due to her impairments (Exhibit 4E and Hearing testimony).

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence

and other evidence in the record for the reasons explained in this decision.

At her hearing, claimant also testified she could walk for 10 to 15 minutes, stand for 30 minutes, sit for 20 to 25 minutes, and lift 9 pounds, before incurring pain and needing to rest. She explained she could walk one flight of stairs. Claimant testified she smoked a half pack of cigarettes per day. She reported she used a computer to play games, interact on Facebook, and pay bills. Claimant alleged she could handle her finances and her daily personal needs. She testified she cooked daily and would go grocery shopping once a week with a prepared list. Claimant admitted she did laundry once a day, used the dishwasher, and enjoyed gardening at her own pace. Claimant explained she had flowers and vegetables in her garden and could garden for a maximum period of two hours. She also testified she enjoyed crafting, such as making wreaths (Exhibits 4E and Hearing testimony).

(Admin Tr. 849; Doc. 13-9, p. 64). However the conclusion that Plaintiff's reporting of her daily living activities are inconsistent with her allegations and the summary of the daily living activities Plaintiff testified to, particularly when supported by no medical opinions or medical evidence as to Plaintiff's RFC, are not substantial evidence supporting the finding of an RFC of medium work.

"Federal courts have repeatedly held that an ALJ cannot speculate as to a Plaintiff's RFC; medical evidence speaking to a claimant's functional capabilities that supports the ALJ's conclusion must be invoked."[29] The ALJ did not do so here.

---

[29] *Biller v. Acting Comm'r of Soc. Sec.*, 962 F. Supp. 2d 761, 779 (W.D. Pa. 2013).

Other than the medical opinions he rejected, the ALJ did not cite to any medical opinions, findings, treatment records or other medical evidence speaking to Plaintiff's physical functional capabilities, much less to any that support his determination that Plaintiff has an RFC of medium work. In this case, the ALJ reached "a[n] RFC determination without the benefit of any medical opinion."[30] "Accordingly, the ALJ's conclusion is not supported by substantial evidence."[31] Remand is therefore required.

### C.   PLAINTIFF'S REMAINING ARGUMENTS

Given that the Court finds it necessary to remand Plaintiff's case because the ALJ's decision is not supported by substantial evidence the Court will not address Plaintiff's remaining claims of error.[32]

[The next page contains the Conclusion]

---

[30] *Snyder v. Colvin*, No. 3:16-CV-01689, 2017 WL 1078330, at *5 (M.D. Pa. Mar. 22, 2017).

[31] *Id.*

[32] *See Burns v. Colvin*, 156 F. Supp. 3d 579, 598 (M.D. Pa. Dec. 30, 2015) (Cohn, M.J.), *report and recommendation adopted*, 156 F. Supp. 3d at 582 (M.D. Pa. Jan. 13, 2016) (Kane, J.) (explaining that "[a] remand may produce different results on these claims, making discussion of them moot.").

## V.    CONCLUSION

Accordingly, Plaintiff's request for further proceedings be Granted as follows:

(1)    The Commissioner's final decision will be VACATED.

(2)    This case will be REMANDED to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) with a new Administrative Law Judge.

(3)    Final judgment in favor of Sandra S. will be issued separately.

(4)    An appropriate order will be issued.

Date: October 17, 2023                    BY THE COURT

                                          *s/William I. Arbuckle*
                                          William I. Arbuckle
                                          U.S. Magistrate Judge